The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.



/S/ RUSS KENDIG

Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| SHELIA RENITO SMITH, | ) | CASE NO. 10-60849 |
| | ) | |
| Debtor. | ) | JUDGE RUSS KENDIG |
| | ) | |
| | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | (NOT FOR PUBLICATION) |
| | ) | |
| | ) | |

Chapter 7 trustee Anne Piero Silagy ("Trustee") filed a motion for turnover on April 22, 2011. Debtor opposes turnover on the basis that the subject property is not property of the estate under 11 U.S.C. § 348. The court held a hearing on August 22, 2011, at which time the parties agreed to a briefing schedule. The parties filed briefs in support of their respective positions and neither filed a request for further hearing.

The court has jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E).

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

1

# FACTS

On March 8, 2010, Debtor filed an individual chapter 13 petition. At the time, she was married and her husband operated a restaurant. Debtor listed her dower interest in the business premises as an asset, valued at $17,700.00. She claimed an exemption of $1,075.00 in the property. Debtor alleges that this asset was the basis for filing a chapter 13 petition rather than a chapter 7 petition. Chapter 13 trustee Toby L. Rosen objected to Debtor's proposed plan under 11 U.S.C. § 1325(a)(3) and (4). The objection included a reference to the chapter 7 value of the business premises. Debtor's plan was confirmed without further action on the objection to confirmation and no chapter 7 value liquidation value was established.

According to Debtor's schedules, her husband contributed income of $800.00 per month to their household. This represents about one-third of the monthly net income.

The court confirmed the plan on September 9, 2010. Debtor's monthly payment was $500.00 per month. The bulk of this payment ($400.00 per month) was applied to a secured vehicle loan. A small portion of the payment was directed toward a priority tax debt. After administrative claims, unsecured creditors were scheduled to receive a dividend of approximately twenty percent of their claims. The general unsecured claims filed totaled approximately $37,589.67.

Four months after confirmation, Debtor voluntarily converted her case to chapter 7. Her Notice of Conversion stated "Debtors (sic) husband died and she can no longer afford the plan." The chapter 13 trustee's final report indicates that the only creditors who received any distribution were administrative and secured claims. No distribution was made on behalf of priority or general unsecured creditors.

Debtor's husband passed away on November 17, 2010. Debtor was the beneficiary of two life insurance policies totaling $125,000.00. Both benefits were paid to Debtor in December 2010.

Between receipt of the life insurance proceeds and her chapter 7 meeting of creditors, Debtor spent nearly $85,000.00. There is some dispute over disposition of the funds:

|  | Trustee: | Debtor: |
| --- | --- | --- |
| Funeral expenses | $11,258.61 | $15,000.00 |
| Tithe | $10,020.00 | $12,500.00 |
| New bedroom furniture | $ 3,365.50 | $ 6,100.00[1] |

---

[1] Debtor has a category for apartment furniture. The amounts suggest Debtor is including the appliances and electronics.

2

| | | |
|---|---|---|
| Electronics | $ 1,234.85 | |
| Washer and dryer | $ 1,470.68 | |
| Jewelry | $ 548.75 | $ 550.00 |
| Loan repayments | $10,750.00 | $ 5,750.00 |
| | | $ 4,500.00 |
| Loans to family/friends | $ 4,800.00 | $ 1,800.00[2] |
| | | $ 2,000.00 |
| | | $ 1,000.00 |
| Apartment deposit/rent prepay | | $ 4,650.00 |
| House insurance, car repair | | $ 2,700.00 |
| Utilities for restaurant/house | | $ 8,000.00 |
| Attorney's fees | | $ 300.00 |
| Wheelchair ramp for husband | | $ 160.00[3] |
| Dinner out | | $ 700.00 |
| Neighbors shoveling snow | | $ 170.00 |
| Out of pocket medical care | | $ 4,500.00 |
| | $ 43,448.39 | $ 70,380.00 |

At the time the 341 meeting was held, Debtor had approximately $40,000.00 in life insurance proceeds remaining.

## LAW AND ANALYSIS

The parties do not dispute the underlying law. In accordance with 11 U.S.C. § 1306(a)(1), the life insurance proceeds, as after-acquired property, were property of Debtor's chapter 13 estate. Upon conversion, the general rule, set forth in 11 U.S.C. § 348(f)(1), provides that "property of the estate in the converted case shall consist of property of the estate, as of the date of filing the petition, that remains in the possession of or is under the control of the debtor on the date of the conversion." By definition, after-acquired property does not become property of the estate. While this may seem illogical, Collier's explains that the legislature "was concerned that the contrary rule would create a serious disincentive to chapter 13 filings because debtors would fear that property attained after filing, including equity created by payment of secured debts, could be lost if the case were converted." 3 Collier on Bankruptcy ¶348.07[1] at 348-23 (16th ed. 2011). Consequently, there is no dispute that, under the general rule, the life insurance proceeds are not property of the chapter 7 estate.

The exception to the general rule is contained in section § 348(f)(2), which states

---

[2] Debtor does not clearly delineate amounts that were loaned, repaid, or gifted.

[3] Clearly, some of Debtor's expenses appear to have been incurred prior to her husband's death.

3

that if the case is converted in bad faith, "the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion." Since Debtor held the funds on the date of conversion, if she converted in bad faith, the life insurance proceeds would be property of the chapter 7 estate and subject to turnover.

Both parties suggest that a review of all the facts of the case are pertinent to the court's determination of Debtor's motivation in filing. The inquiry is fact-specific. *See, e.g.*, Citizens Bank v. McKendree, 2006 WL 2193053 (S.D. Ill. 2006) (unreported); In re Messer, 2000 WL 33673648 (Bankr. M.D.N.C. 2000) (citing In re Siegfried, 219 B.R. 581, 585 (Bankr. D. Colo. 1998)). Courts in the Seventh Circuit favorably adopted an analysis similar to that used for good faith under § 1325(a)(3). *See* McKendree, 2006 WL 2193053, * 3. The specific factors include:

> the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

Id. (citing In re Love, 957 F.2d 1350, 1357 (7th Cir. 1992)).

In this circuit, the totality of the circumstances drive bad faith/lack of good faith determinations. Adell v. John Richards Homes Bldg. Co., L.L.C. (In re John Richards Homes Bldg. Co., L.L.C.), 439 F.3d 248 (6th Cir. 2006) (§ 303(i)); Behlke v. Eisen (In re Behlke), 358 F.3d 429 (6th Cir. 2004) (§707(b)); Alt v. U.S. (In re Alt), 305 F.3d 413 (6th Cir. 2002) (§ 1325(a)(3) and § 1307(c)); Moyer v. Hollinshead (In re Hollinshead), 438 B.R. 354 (B.A.P. 6th Cir. 2010) (unpublished) (Federal Rule of Bankruptcy Procedure 1009(a) (citations omitted)). Relying on In re Bejarano, the parties also agree that bad faith is 'not simply bad judgment or negligence, but it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will.' 302 B.R. 559, 562 (Bankr. N.D. Ohio 2003) (citing U.S. v. True, 250 F.3d 410, 423 (6th Cir. 2001)).

In its review, the Bejarano court considered the timing of the conversion, the chapter 13 pay history, the debtors' participation in the chapter 13 process, the amount of post-petition debt, and the debtors' previous bankruptcy filings, and the value of the assets in question. Bejarano, 302 B.R. at 562-63. Although some of the facts were indicative of bad faith, the court ultimately concluded that the debtors did not purpose to abuse the bankruptcy system, mainly premised on the fact that one of the assets, a personal injury claim, accrued post-petition, and neither of the assets in question were particularly valuable. Id.

4

In this case, Debtor, a below-median debtor, allegedly filed a chapter 13 petition in order to protect her husband's business on the theory that her dower interest was an asset. There are no allegations that she was not forthright in the filing of the chapter 13 petition. The chapter 13 trustee's final report shows that between March 8, 2010 and the conversion, Debtor paid $5,081.85 into the plan, representing approximately ten payments under her confirmed plan. Unsecured creditors were scheduled to received twenty percent of their claims. These facts, standing alone, do not indicate bad faith.

What is symptomatic of bad faith is the timing and reason for Debtor's conversion. Debtor's husband passed away on November 17, 2010. Two months later, after receiving $125,000.00 in life insurance proceeds, Debtor filed a notice of conversion that states she cannot afford the plan payments. This is simply false. Not only did she have a source of income to replace her husband's monthly income ($800.00) for the duration of the plan (approximately 26 months), she had an amount that was sufficient to pay the unsecured debt in full. Further, at the time of conversion, the life insurance proceeds were property of the chapter 13 estate. Clearly, Debtor's statement was disingenuous and impugns any claim of good faith in converting the case.

Additionally, the court finds Debtor's amended Schedule J suspect. When she originally filed this case, and her husband was living, Debtor's monthly household expenses totaled $2,074.25. After his death, Debtor's expenses had increased to $2,549.25, a difference of $475.00.

There may be a question among courts as to whether post-conversion facts can be considered in determining whether a case was converted in bad faith. *See, e.g.*, Norman v. Yates (In re Yates), 2005 WL 2499488 (B.A.P. 10th Cir. 2005) (unpublished) (finding creditor's evidence related to the pre-conversion conduct, and not the conversion itself, and therefore did not establish bad faith in the conversion); United States Trustee v. Standifered (In re Standifered), 2009 WL 7831848, *2 (D. N.M. 2009) (citation omitted) (holding that "[c]ourts may review the debtors' entire course of conduct in the prior chapter 13 case in determining whether the conversion to chapter 7 was done in bad faith."); *cf.* Mullican v. Moser (In re Mullican), 417 B.R. 408, 414 (E.D. Tex. 2009) (stating "the bankruptcy court may consider all facts that are relevant to the debtor's intent at the time of conversion, regardless of whether the fact occurred pre-conversion or post-conversion.") This court holds that the totality of the circumstances, including post-conversion facts, are ripe for consideration. Post-conversion facts can help a court ascertain the credibility of a debtor's statements regarding the motivation for conversion and are therefore highly relevant.

In this case, debtor's post-conversion actions speak volumes about her intent. Prior to her husband's death, Debtor's net household income was approximately $30,000.00. It declined to approximately $21,000.00 after her husband passed. In less than three months, Debtor had spent the equivalent of her annual after tax income for three years. She selectively decided to repay creditors who were close to her and

5

completely disregard the creditors included in the bankruptcy case.

Further, she has failed to fully account for the life insurance proceeds. It is clear that some of the itemized expenses include items which pre-date her husband's death. This raises to the "unfair manipulation of the bankruptcy system to the substantial detriment or disadvantage of creditors" discussed in Bejarano. 302 B.R. at 563.

Part of Debtor's good faith argument is premised on her understanding that, upon conversion, Trustee could sell the restaurant property for the benefit of her unsecured creditors. As Trustee identifies, this is not possible. The real estate was titled to Debtor's husband and is now an asset of his probate estate. Since the property was not owned by Debtor, Trustee has no authority to liquidate the property. Debtor's claims that the unsecured creditors will be paid is inaccurate. Although Debtor's mistaken understanding of the law may not arise to bad faith, the impact to unsecured creditors is detrimental.

Debtor's reliance on In re Doetsch is misguided. The Doetsch debtor had committed to paying $18,000.00 to unsecured creditors. Nearly two years into the plan, after paying nearly fifty-percent of the amount due under the plan, the debtor received notice that the plan was unfeasible by approximately $14,000.00. Debtor's response was to convert her case. In finding the conversion was not in bad faith, the court emphasized that it was not clear that the debtor was aware of an obligation to report the inheritance. The court also pointed out that when Debtor received the inheritance, she had been diagnosed with ovarian cancer, had lost her part-time second job, and was off work from her regular job for a period of time. Although the court indicated she may have exercised poor judgment in her expenditures, it found no pattern of fraud or deceit, and concluded the conversion was necessitated by the lack of feasibility.

Similarly, Debtor's citation to In re Gibson is also inapposite. In re Gibson, Case No. 01-17173 (Bankr. S.D. Ohio January 17, 2008). In Gibson, debtor-husband was injured in a post-petition accident and a personal injury claim arose. The debtors converted before receipt of any of the personal injury proceeds. The court specifically found the debtors converted as a result in a change in circumstances following the accident and were not attempting to manipulate the bankruptcy process. The loss of debtors' home may have been a key factor in the court's finding.

The facts that appear to have mitigated a bad faith finding in Doetsch and Gibson are simply not present. First, the same financial hardships are simply not born out by the facts here. Although Debtor may have lost income, her expenses increased significantly in spite of the smaller household size. Second, the substantial life insurance proceeds gave her the means to continue her chapter 13 payments. Third, while Debtor was current on plan payments, she had paid nothing to her unsecured creditors at the time of conversion. Her actions belie any regard for her prepetition unsecured creditors. Fourth, she was completely disingenuous in her conversion document.

6

Based on the totality of the circumstances, the court concludes that Debtor did convert her case in bad faith and the balance of the life insurance proceeds constitute property of the estate. Trustee's motion for turnover is granted.

An order will be issued immediately reflecting the decision of the court.

# # #

## SERVICE LIST

Nicole L. Rohr
Thrush & Rohr LLC
4410 22nd Street NW
Canton, OH 44708

Shelia Renito Smith
3746 Martindale Rd NE Apt 3
Canton, OH 44714

Anne Piero Silagy, Esq
220 Market Ave S
#900
Canton, OH 44702

Bruce R Schrader, II
Michael J. Carey
Roetzel & Andress
222 S Main St
Suite 400
Akron, OH 44308